USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/20/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

CESAR GONZALES, et al., :

                 Plaintiffs, : 15 Civ. 4161 (PAC)(HBP)

   -against- : OPINION
                                        AND ORDER

27 W.H. BAKE, LLC, et al., :

                 Defendants. :

-----------------------------------X

        PITMAN, United States Magistrate Judge:

        On March 29, 2018, I presided over a settlement conference attended by the parties and their counsel, at which a settlement was reached. This matter is now before me on the parties' joint application to approve their settlement.[1] All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

        Plaintiffs, who worked at defendants' restaurant and who were employed for varying periods of time and paid different amounts of wages,[2] brought this action under the Fair Labor

---

[1] Although the parties have agreed that no submissions need be made in support of the settlement, the parties intend to put the agreement in writing.

[2] Plaintiff Hermogenes Bravo alleges that he worked for defendants from approximately May 2009 through May 2015. Plaintiff Hermenegildo Flores alleges that he worked for

(continued...)

Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"). Plaintiffs claim that defendants failed to pay them minimum wage during certain periods of their employment, made illegal deductions from their wages based on tips that plaintiffs received and failed to pay plaintiffs overtime premium pay. Plaintiffs also assert claims based on defendants' alleged failure to maintain certain payroll records and to provide certain notices as required by the NYLL. Plaintiffs claim that they are entitled to $411,300.00 in total damages, exclusive of pre-judgment interest and attorney's fees and costs. Specifically, Bravo claims that he is owed a total $121,600.00, Flores claims that he is owed a total of $186,000.00, Perez claims that he is owed a total of $56,700 and Soriano claims that he is owed a total of $47,000.00. Using these damages figures, Bravo's pro rata share of the total damages claimed is 29.6%, Flores's pro rata share is 45.2%, Perez's pro rata share is 13.8% and Soriano's pro rata share is 11.4%.

Defendants dispute all of plaintiffs' claims. Defendants contend that plaintiffs performed substantial tipped duties

---

²(...continued)
defendants from approximately July 2009 through February 2015. Plaintiff Jose Filemon Perez alleges that he worked for defendants from approximately May 2012 through June 30, 2015. Plaintiff Tomas Soriano alleges that he worked for defendants from approximately September 2007 through January 31, 2014.

and, thus, defendants properly paid plaintiffs at the reduced "tip credit" hourly rate. Defendants also claim that none of the plaintiffs worked more than 40 hours per week and were not, therefore, entitled to overtime premium pay. Finally, defendants accuse plaintiffs of taking advantage of the fact that defendants' records pre-dating approximately October 2012 were destroyed due to flooding caused by Hurricane Sandy. Despite the lack of documentary evidence, defendants represent that a former employee would testify that defendants complied with the recordkeeping and notice requirements of the NYLL, paid plaintiffs all wages to which they were entitled and that plaintiffs did not work the number of hours that they now claim.

Following a protracted discussion at the settlement conference of the strengths and weaknesses of the parties' respective positions, the parties agreed to resolve the dispute for the total amount of $135,000.00 to be paid in six installments.[3] The parties also agreed that plaintiffs' counsel will receive one-third of the total settlement amount ($45,000.00) for attorneys' fees. The amount claimed by each plaintiff and the

---

[3]The exact dates on which each of the six payments shall be due will be included in the written agreement between the parties. The parties also agreed that defendants will execute a confession of judgment providing that in the event of an uncured default, plaintiffs may enter judgment for 150% of the unpaid balance of the settlement amount.

3

net amount that each will received after deduction of legal fees and costs are as follows:

| Plaintiff | Amount Claimed | Net Settlement Amount |
|---|---|---|
| Hermogenes Bravo | $121,600.00 | $26,608.32 |
| Hermenegildo Flores | $186.000.00 | $40,700.22 |
| Jose Filemon Perez | $56,700.00 | $12,407.00 |
| Tomas Soriano | $47,000.00 | $10,284.46 |
| **Total** | **$411,300.00** | **$90,000.00** |

Court approval of an FLSA settlement is appropriate

> "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376. at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliquichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quota-

4

tion marks omitted). In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States District Judge, identified five factors that are relevant to an assessment of fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(internal quotation marks omitted). The settlement here satisfies these criteria.

First, the total settlement represents approximately 32.8% of plaintiffs' total alleged damages, exclusive of prejudgment interest. Defendants contend that their records post-dating October 2012 support their position that plaintiffs received all wages owed and that they were not entitled to any overtime premium pay. In addition, although defendants' records pre-dating October 2012 were destroyed, defendants represent that they have at least one witness who would be willing and able to testify that plaintiffs performed substantial tipped work, did not work any overtime and were lawfully paid all wages to which

they were entitled. As discussed in more detail below, given the risks these issues present, plaintiffs' settlement amount is reasonable.

Second, the settlement will entirely avoid the expense and aggravation of litigation. As noted above, defendants dispute that plaintiffs' claim that they worked more than 40 hours per week and performed substantial non-tipped duties. Defendants also represent that they have identified a former employee whose testimony would support their position. Thus, trial preparation would likely require additional depositions to explore these issues. The settlement avoids the necessity of conducting these depositions.

Third, the settlement will enable plaintiffs to avoid the risk of litigation. The largest portion of plaintiffs' claimed damages is allegedly unpaid minimum wages and overtime premium pay for the period of their employment pre-dating October 2012 -- the time period for which defendants' records were lost. However, plaintiffs will still have to establish that they were paid below minimum wage and were entitled to overtime wages and rebut the competing testimony of defendants' witness disputing plaintiffs' claims. Thus, it is uncertain whether, or how much, plaintiffs would recover at trial. See Bodon v. Domino's Pizza, LLC, No. 09-CV-2941 (SLT), 2015 WL 588656 at *6 (E.D.N.Y. Jan.

16, 2015) (Report & Recommendation) ("[T]he question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . ." (internal quotation marks omitted)), adopted sub nom. by, Bodon v. Domino's Pizza, Inc., 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); Massiah v. MetroPlus Health Plan, Inc., No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable . . . ." (internal quotation marks omitted)).

Fourth, because I presided over the settlement conference that immediately preceded plaintiffs' acceptance of the settlement, I know that the settlement is the product of arm's-length bargaining between experienced counsel. Both counsel represented their clients zealously at the settlement conference.

Fifth, there are no factors here that suggest the existence of fraud. The material terms of the settlement were reached at a judicially supervised settlement conference. This fact further negates the possibility of fraud or collusion.

The settlement fund will be distributed to plaintiffs on a pro rata basis. In light of number of hours worked by and the hourly rates paid to each plaintiff, the allocation of the settlement fund is fair and reasonable. Cf. Fu v. Mee May Corp., 15 Civ. 4549 (HBP), 2017 WL 2172910 at *1-*2 (S.D.N.Y. Mar. 31, 2017) (Pitman, M.J.) (rejecting settlement agreement where no explanation provided for allocation of settlement proceeds).

The parties have also agreed to execute mutual general releases.[4] Judges in this District have approved FLSA settlements containing mutual general releases. Souza v. 65 St. Marks Bistro, 15 Civ. 327 (JLC), 2015 WL 7271747 at *5 (S.D.N.Y. Nov. 5, 2015) (Cott, M.J.); accord Cionca v. Interactive Realty, LLC, 15 Civ. 5123 (BCM), 2016 WL 3440554 at *3-*4 (S.D.N.Y. June 10, 2016) (Moses, M.J.); Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 13 Civ. 5008 (RJS), 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3,

---

[4] In order for a general release to be truly mutual and, thus, consistent with the "primary remedial purpose" of the FLSA, plaintiffs must receive a general release from all the persons and entities to whom plaintiffs provide a general release. Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207; see Chowdhury v. Brioni Am., Inc., 16 Civ. 344 (HBP), 2017 WL 5125535 at *3 (S.D.N.Y. Nov. 1, 2017) (Pitman, M.J.) (rejecting settlement where general release was not "truly mutual" because plaintiffs released "a broad array of persons and entities other than the named defendants, including defendants' former, present and future employees . . ." yet plaintiffs only received a release from defendants' claims).

2016) (Sullivan, D.J.). Accordingly, I find the release agreed to by the parties permissible.

Finally, the settlement provides that 33.3% of the settlement fund -- $45,000.00 -- will be paid to plaintiffs' counsel as a contingency fee. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), citing Zhang v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) and Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"); Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A] fee that is one-third of the fund is typical" in FLSA cases); accord Calle v. Elite Specialty Coatings Plus, Inc., No. 13-CV-

6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin. Corp., 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.Y. June 22, 2012) (Freeman, M.J.).

Accordingly, for all the foregoing reasons, I approve the settlement in this matter. In light of the settlement, the action is dismissed with prejudice and without costs. The Clerk is respectfully requested to mark this matter closed.

Dated:  New York, New York
        April 20, 2018

SO ORDERED

/s/ Henry Pitman
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel